**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **GARY CARTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:13-cv-00064** |
| | ) | **Judge Sharp / Knowles** |
| **W.B. MELTON, in his official and individual** | ) | |
| **capacities, and SHANNON HARVEY, in her** | ) | |
| **official and individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment.

Docket No. 31. Defendants have contemporaneously filed a supporting Memorandum of Law

(Docket No. 32), the Affidavits with Exhibits of Leah Beasley (Docket Nos. 33, 33-1) and

Shannon Harvey (Docket Nos. 35, 35-1 through 35-34, 36), and a Statement of Facts (Docket

No. 37). Defendants have also filed excerpts from Plaintiff's Deposition in his earlier case,

along with a Declaration that was filed in that case (Docket Nos. 38-1, 38-2), an August 22, 2013

Petition for Relief filed with the Tennessee Court of Criminal Appeals (Docket No. 38-3), an

August 9, 2013 Petition for Relief from Unlawful Detention pursuant to Habeas Corpus filed

with the Criminal Court of Overton County, Tennessee (Docket No. 38-4), a Petition for Relief

from Conviction or Sentence filed with the Criminal Court of Overton County (Docket No. 38-

5), a Preliminary Order from the Criminal Court of Overton County (Docket No. 38-6), and a

Motion and Order in the Criminal Court of Overton County, Tennessee (Docket No. 38-11).

Plaintiff has not responded to the instant Motion, but has responded to Defendants' Statement of Facts. *See* Docket No. 45.

Plaintiff filed this pro se, in forma pauperis action, alleging that Defendants are violating his Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 because, on account of his race, they are depriving him of life and liberty by running his Tennessee and Kentucky sentences consecutively instead of concurrently, as he agreed to when he plead no-contest to his criminal charges. Docket Nos. 1, 10, Complaint and Amended Complaint. Plaintiff argues that he is being housed in the Overton County Jail "beyond the terms of [his] sentence" because he should have already been transferred to Kentucky. *Id.* Plaintiff also contends that he is subject to racism and cruel and "unjust" conditions daily. *Id.* In particular, Plaintiff avers he was housed in booking for a month and was denied the ability to take showers, make telephone calls, and have time outside of his cell while being subjected to racial slurs by other inmates. *Id.* He further avers that: a Jail official used a racial slur against him; that he has been accused of behavior that he has not done; that he is the "last one out for rec" and the "first one put up everyday without fail"; that his "meals are almost always extremely short" and he is "usually the last one to receive a tray"; that he marked his sheets with an "x" and therefore knows that he did not receive his correct sheets back after they had been laundered, instead receiving only a half-sheet; and that a white inmate on restriction was permitted to take a shower but he was not. *Id.* Plaintiff sues Overton County Sheriff W.B. Melton and Overton County Criminal Justice Center Jail Administrator Shannon Harvey in their individual and official capacities.[1] *Id.* Plaintiff

---

[1] Plaintiff originally also sued Assistant District Attorney Owen Burnett, Judge David Patterson, and Defense Attorney Joshua Hoeppner as well (*see* Docket No. 1), but those Defendants were terminated by an Order entered by Judge Sharp on September 25, 2013 (*see*

seeks "declaratory relief," "punitive damages," "nominal damages," and "$1000.00 a day in irreparable damages as compensation for the unjust detention." *Id.*

Defendants filed the instant Motion and supporting materials arguing that: (1) neither Defendant was properly served in his/her official capacity; (2) many of Plaintiff's claims are barred by the one year statute of limitations set forth in Tenn. Code Ann. § 28-3-104(a)(3); (3) Plaintiff cannot establish either that his constitutional rights were violated or that Defendants violated said rights; (4) Defendants are qualifiedly immune; (5) Plaintiff has failed to exhaust his administrative remedies; and (6) Plaintiff's claims are moot, as he was transferred to the Bledsoe County Correctional Complex in Pikeville, Tennessee (a TDOC facility), on December 6, 2013. Docket No. 32.

With regard to Defendants' contention that neither of them was properly served in his/her official capacity, Defendants argue that because a suit against an individual in his/her official capacity is equivalent to a suit against the governmental entity, Plaintiff should have served the governmental entity in order to effectuate proper service on Defendants in their official capacities. *Id.* Defendants acknowledge that Plaintiff filed summonses for them individually, to be served at 1010 John T. Poindexter Drive in Lexington, Tennessee, but argue that neither summons indicated whether it was to serve the individual Defendants or Defendants in their official capacities. *Id.* Defendants contend that, in order to be effective, the summons should have been served on the Chief Executive Officer of Overton County, but the summons at issue were served on Kristin Rosecrants, who was not the County Executive for Overton County at the

_____

Docket No. 4). Accordingly, Defendants Melton and Harvey are the only remaining Defendants in this action.

time of service, nor did she have authority to accept service of process on behalf of Overton County. *Id.* Defendants contend, therefore, that service of process was not effectuated against either Defendant in his/her official capacity. *Id.*

Regarding Defendants' contention that many of Plaintiff's claims are barred by the one year statute of limitations set forth in Tenn. Code Ann. § 28-3-104(a)(3), Defendants assert that "the incidents alleged on pages two through six in Plaintiff's amended complaint occurred before September 2012, with the exception of a cursory mention of an event alleged to have taken place in December 2012," and that all events alleged to have occurred before September 2012 are beyond the limitations period and are time-barred. *Id.*, p. 24-25.

With respect to Defendants' contention that Plaintiff cannot establish either that his constitutional rights have been violated or that Defendants violated said rights, Defendants address each of Plaintiff's allegations in turn. *Id.*, p. 25-34. As to Plaintiff's Eighth Amendment claim for being subjected to racial slurs, Defendants argue that the use of abusive language or harassment in general by jail guards and/or other inmates does not rise to the level of an Eighth Amendment violation, such that this claim must fail. *Id.*, p. 25-26. As to Plaintiff's contention that officers should have prevented him from being subjected to racial slurs from another inmate (which led to a fight on March 6, 2012), Defendants argue that this incident is time-barred and note that the officer was attempting to return Plaintiff to his cell when Plaintiff "went through Sgt. Parrigin in order to fight" the other inmate. *Id.*, p. 27-28. With regard to Plaintiff's conclusory statement that his rights were violated following an incident that occurred on December 14, 2012, Defendants maintain that Plaintiff has failed to provide any additional details concerning this claim and his conclusory allegations are insufficient to state a claim. *Id.*,

p. 28.  Concerning Plaintiff's claims regarding his meals, Defendants argue that he has failed to demonstrate that officers shorted him food and/or intentionally gave him his food last, and he cannot demonstrate that either Defendant was deliberately indifferent to his needs and/or subjected him to cruel and unusual punishment by denying him food and/or feeding him less than the other inmates.  *Id.*, p. 28-29.  Regarding Plaintiff's complaints that he is the last one to be let out for recreational time and the first one to be returned to his cell, and that he did not receive his own sheet back from laundry, Defendants argue that Plaintiff "offers no evidence to support these claims" and conclusory statements are insufficient to establish a constitutional violations.  *Id.*, p. 29-30.  Defendants also assert that "there is no constitutional right to receive a particular sheet, nor is there a constitutional violation when one is the last person to go to rec and/or the first person to be returned to one's cell."  *Id.*, p. 30. Defendants further note that recreation time is being provided.  *Id.*

Inasmuch as Plaintiff attempts to assert an Eighth Amendment claim for his wife with regard to his contention that she was arrested at the same time he was and denied proper medical care, Defendants argue that Plaintiff lacks standing to raise these claims, and that, even if Plaintiff had standing, those claims would be time-barred.  *Id.*, p. 32.

With regard to Plaintiff's Fourteenth Amendment claims that he is being wrongly detained in the Overton County Jail following his conviction; that Defendants have incorrectly calculated his time, resulting in his being incarcerated "beyond the terms of [his] sentence"; and that his Tennessee conviction is not running concurrently with his Kentucky conviction, Defendants argue that they have no control over the calculation of his time of incarceration, whether Kentucky will agree to run its sentence concurrently with the Tennessee sentence,

and/or Plaintiff's assigned place of confinement during his incarceration on the Tennessee conviction, such that they cannot be held liable under § 1983. *Id.*, p. 31.

While Defendants argue that Plaintiff cannot establish either that his constitutional rights have been violated or that Defendants violated said rights, in the alternative, they also contend that they are qualifiedly immune because, *arguendo*, if a constitutional violation did occur, such violation did not involve a "clearly established right" and Defendant's conduct was not "objectively unreasonable." *Id.*, p. 34-35.

Defendants further argue that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PRLA"), 42 U.S.C. §1997. *Id.*, p. 36. Defendants maintain that the Overton County Jail does have a grievance procedure, of which Plaintiff partially availed himself. *Id.*, p. 37. Specifically, Defendants maintain that Plaintiff filed a number of grievances, but failed to appeal those to the Sheriff. *Id.* Defendants contend that, accordingly, Plaintiff has not complied with the PRLA's exhaustion requirement and his claims must be dismissed. *Id.*

Finally, Defendants note that Plaintiff was transferred from the Overton County Jail to the Bledsoe County Correctional Complex in Pikeville, Tennessee (a TDOC facility), on December 6, 2013. *Id.*, p. 38. Defendants maintain that all of Plaintiff's claims against them are now moot, as he is no longer housed in their facility, and that his claims, therefore, should be dismissed. *Id.*

Plaintiff has not responded to the instant Motion.[2]

---

[2] As noted, Plaintiff did not respond to Defendants' Motion for Summary Judgment, but did respond to Defendants' Statement of Facts.

6

For the reasons set forth below, the undersigned concludes that Plaintiff has failed to demonstrate that Defendants violated his constitutional rights. Absent such a violation, Plaintiff cannot sustain his constitutional claims and Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment be GRANTED, and that this action be DISMISSED.

## II.  Facts[3]

Plaintiff was convicted on August 11, 2008, for possession of a handgun by a convicted felon in the Jefferson County Circuit Court of Kentucky.  Docket No. 10, Amended Complaint; Docket No. 38-2, Declaration with Exhibits of Deanna Fankhauser ("Fankhouser Dec."), ¶¶ 4, 9; Docket No. 38-1, Excerpts from Plaintiff's Deposition ("Plaintiff's Dep."), pp. 15:24-16:23. Plaintiff was sentenced to six years for this conviction.  Fankhouser Dec., Ex. A.  After serving a portion of this sentence in Kentucky, Plaintiff was released on parole on June 5, 2009. Fankhouser Dec., Ex. A; Docket No. 33, Affidavit with Exhibits of Leah Beasley ("Beasley Aff."), Ex. A.

On May 27, 2010, the Kentucky Parole Board issued an Absconder Warrant against Plaintiff in which he was charged with violating the terms of his parole by "absconding parole supervision," "having more than one residence at a time," and "failure to attend treatment for substance abuse."  Beasley Aff., Ex. A.

On February 27, 2012, Plaintiff was pulled over by an Overton County Sheriff's Deputy

---

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.  Additionally, while Plaintiff has responded to Defendants' Statement of Facts and "disputed" some of those facts, Plaintiff has failed to include the requisite citations to the record (*see* Local Rule 56.01(c)), and he has failed to verify his responses.  Accordingly, Plaintiff's responses are not in a form required by Fed. R. Civ. P. 56.

for speeding on Highway 111 South in Overton County, Tennessee. Docket No. 35, Affidavit with Exhibits of Shannon Harvey ("Harvey Aff."), ¶3, Ex. B. Initially, Plaintiff refused to provide the detectives his name, but eventually said that his name was Michael Sydney B. McCray, which was the name under which he was booked into the Overton County Detention Facility on February 28, 2012. *Id.* After receiving a telephone call from Detective Hritz, upon further investigation, the Jail learned that Plaintiff's name was Gary Wayne Carter and that he was an alleged member of the "Bloods," "Vice Lord," and "Piru Treetoppers" gangs. *Id.*, ¶ 5, Exs. D, E.

Based upon the difficulty in determining Plaintiff's true identity and the information provided about him by the woman with whom he was arrested, Plaintiff was housed in booking until Jail personnel had adequate information to properly classify him. Harvey Aff., ¶ 4, Ex. E. Housing Plaintiff in booking allowed personnel to closely monitor him, for his protection and the protection of personnel and other inmates. *Id.* While housed in booking, Plaintiff became angry when he was not permitted to use a toilet other than the one located in his cell. *Id.*, Exs. D, E. Plaintiff accused the officer of being disrespectful to him. *Id.*

On March 6, 2012, Plaintiff asked Sgt. Parrigin to use the telephone. *Id.*, ¶ 7; Ex. F. Sgt. Parrigin agreed and removed Plaintiff from his cell. *Id.* Plaintiff, an African-American, passed by Freddie Bledsoe, a Caucasian inmate who was in the booking area in shackles and handcuffs. *Id.* Plaintiff then spoke with inmate Bledsoe and asked him "What's up?" in reference to racial slurs inmate Bledsoe had been using earlier that day. *Id.* Inmate Bledsoe took a fighting stance and began urging Plaintiff to fight. *Id.* As Plaintiff and inmate Bledsoe attempted to reach one another, Sgt. Parrigin tried to defuse the situation by stepping between the two inmates and

guiding Plaintiff toward the cell door. *Id.* Inmate Bledsoe began using racial slurs and Plaintiff

went through Sgt. Parrigin to fight with inmate Bledsoe. *Id.* He and Plaintiff began fighting. *Id.*

Sgt. Parrigin warned them to stop numerous times, but they continued to fight. *Id.* In order to

get the situation under control, Cpl. Copeland and Sgt. Parrigin tased both inmates. *Id.* Once the

inmates were secured, EMS was called to remove the tasers from the inmates. *Id.*

On the morning of March 21, 2012, William Ledbetter, another inmate in Plaintiff's cell

block, complained that he had not received a meal tray. Harvey Aff., ¶ 8, Ex. F. Upon

investigation, Corrections Officer ("CO") Cole determined that Plaintiff was hiding an extra tray.

*Id.* CO Cole instructed inmate Ledbetter to get his tray, upon which Plaintiff gave CO Cole a

threatening look and told CO Cole to give a note to the sergeant. *Id.*

The same day, Plaintiff had an altercation with Cpl. Tracy Dishman and Sgt. Marty

Thomas, wherein Plaintiff began yelling and screaming, claiming that he was being

discriminated against because of his race. *Id.*, ¶ 9; Ex. F. Plaintiff claimed that he was being

denied recreation time, showers, and use of a bathroom other than the one in his cell. *Id.*

Plaintiff refused to calm down after being instructed to do so by both Cpl. Dishman and Sgt.

Thomas. *Id.* As a result of the incident, Plaintiff was written up and given a Notice of

Disciplinary Hearing where he was charged with verbal assault, disrespect of officers and

employees, failure to follow orders and/or instructions, and causing a disturbance. *Id.*, Ex. G.

The next day, March 22, 2012, Plaintiff received two additional Notifications of

Disciplinary Hearing in which he was charged with disrespect to officers and employees. *Id.*, ¶

10, Exs. H, I. The first was a result of Plaintiff becoming upset and cursing at Sgt. Gingerich,

complaining about the write-up he had been given the previous day. *Id.* The second was a result

of CO Ethan Bean entering cell 405 and noticing that Plaintiff had an extra pair of pants, in violation of Jail rules. *Id.* CO Bean asked Plaintiff to remove the pants and give them to him, but Plaintiff became very angry. *Id.* CO Bean advised Plaintiff to calm down or he would be forced to spray him. *Id.* Plaintiff walked to the bathroom and removed the pants, but then started yelling again. *Id.* Sgt. Gingerich advised CO Bean to place Plaintiff in cell 407. *Id.*

On March 25, 2012, a formal disciplinary hearing was held on these issues. *Id.*, ¶ 11, Ex. J. Plaintiff was found guilty and was sentenced to fifteen days lockdown with loss of visitation, commissary, and recreation. *Id.*

On May 15, 2012, CO David Phillips was in the max cells picking up lunch trays when Plaintiff turned on the television. *Id.*, ¶ 12, Ex. K. CO Phillips asked Plaintiff to turn the television off since max was on lockdown. *Id.* Plaintiff became upset, and COs Carter and Godwin instructed Plaintiff to calm down and back up. *Id.* Plaintiff got even more upset, took a defensive stance and closed his fists. *Id.* CO Phillips tased Plaintiff once, then CO Bean entered and handcuffed him. *Id.*

On July 12, 2012, Plaintiff was indicted by the Adair County, Kentucky Grand Jury on charges for incidents that had occurred between December 2011 and February 2012. *Id.*, ¶ 13, Ex. L.

On August 15, 2012, an incident occurred in which a tray was broken into four pieces. *Id.*, ¶ 14, Ex. F. CO Bean took that tray into the max cell and stated that whoever broke it should speak up or the entire block would be punished. *Id.* Plaintiff spoke up and claimed responsibility. *Id.* As a result, Plaintiff was placed on restrictions. *Id.* The next day, COs Jordan Harris and Dalton Durham spoke with Plaintiff to investigate the incident. *Id.* Plaintiff reported that it had

been an accident: the tray had a small crack in it and when Plaintiff was washing the tray before returning it, it broke. *Id.* Plaintiff indicated that he spoke up to prevent the entire block from being punished. *Id.* He requested leniency since it was an accident. *Id.* The tray was not just broken in half, however; it was broken into four pieces, undermining his story that it had a crack in it and broke accidentally. *Id.*

On August 21, 2012, CO Harris was in the max block doing a headcount. Harvey Aff., ¶15, Ex. F. At that time, Plaintiff appeared to be fine and was laughing and joking around. *Id.* As CO Harris left the block, Plaintiff yelled out to tell his wife, who was in cell 240 of the women's section of the Jail, that he loved her. *Id.* CO Harris then heard kicking and screaming and turned to see that Plaintiff was creating the disturbance. *Id.* When he asked Plaintiff what was wrong, Plaintiff responded with cursing. *Id.* CO Harris approached Plaintiff's cell, at which time Plaintiff threw off his blanket, stating, "Oh you gonna do something?" *Id.* CO Harris walked into the cell and asked Plaintiff what was wrong. *Id.* Plaintiff replied that everyone was messing with him and trying to hide his wife from him. *Id.* Plaintiff threatened CO Harris, stating that he was going to make CO Harris disappear. *Id.* CO Harris then explained that Plaintiff's wife was housed in the women's section of the Jail. *Id.* Plaintiff threatened to "check out." *Id.* CO Harris advised Plaintiff that that would be a bad idea. *Id.* Sgt. Beed then entered the cell. *Id.* Plaintiff stated that all of the COs were cruel and mistreated him on account of his race. *Id.* As the conversation continued, Plaintiff grew more agitated and began slapping his hands together, continued to curse the officers, and took a fighting stance. *Id.* Plaintiff again complained that he was mistreated because of his race, and CO Harris assured him that race was not an issue. *Id.* Sgt. Beed advised Plaintiff to be quiet, but Plaintiff grew more agitated and

continued screaming. *Id.* Because the situation was deteriorating, Sgt. Beed ordered everyone out of the cell. *Id.* Since Plaintiff was already on restriction, he lost his night recreation time due to his behavior. *Id.*

On September 1, 2012, Plaintiff threatened CO Bean, claiming that his tray had been shorted food. *Id.*, ¶ 16, Ex. F. After consulting with Sgt. Thomas, CO Bean and several other officers went to Plaintiff's cell to move him to another cellblock. *Id.* As they were moving his things, they found a bolt under his mat. *Id.* CO Bean instructed him to put his hands behind his back, at which time Plaintiff threw up gang signs and said that his clique was going to kill him, then placed his hands behind his back. *Id.* When CO Bean was escorting Plaintiff down the stairs, the pair of them fell. *Id.*

On September 2, 2012, Plaintiff refused to get out of the shower to go back to his cell. *Id.*, ¶ 17, Ex. F. Plaintiff's recreation time was over and it was time to return to his cell, but he had waited until the last minute to take his shower, and was in the shower when his time was over. *Id.* After he refused to get out of the shower, COs Godwin, Phillips, and Russo went to put him back in his cell. *Id.* After opening the curtain and telling him to get out, Plaintiff asked if the officers were going to spray him. *Id.* They replied that they would if he continued to disobey their orders. *Id.* Plaintiff then agreed to go back to his cell without further incident. *Id.*

On October 10, 2012, CO Godwin heard Plaintiff making threatening comments regarding Jail personnel. *Id.*, ¶ 18, Ex. F. Plaintiff told CO Godwin, "If I don't get my mail today, I will train your little ass, train you across your teeth." *Id.* Plaintiff had also been walking around stating that he had been nice for too long and that he was "going to start breaking jaws, arms, whatever it takes" and that he was "tired of being treated like crap." *Id.*

On October 11, 2012, Sgt. Parrigin and CO James Gavagan were handing out meal trays to the inmates in max cell.  Harvey Aff., ¶ 19, Ex. F.  CO Gavagan handed Plaintiff the next tray on the rack of trays, and Plaintiff stated that he had been cheated out of food again.  *Id.*  Sgt. Parrigin denied any mistreatment toward Plaintiff.  *Id.*  Sgt. Parrigin heard Plaintiff yelling and what sounded like a tray being thrown against the wall.  *Id.*  When Sgt. Parrigin and CO Gavagan arrived at Plaintiff's cell, they observed Plaintiff yelling and thrashing his arms around, claiming that he had been mistreated because of his race.  *Id.*  Sgt. Parrigin assured Plaintiff that no one at the Jail had any issues with his race and that he was treated just like all the other inmates.  *Id.*  Plaintiff continued, stating that he was going to break arms, legs, and backs in the Jail and whatever else he had to do if he were not moved after his next court date.  *Id.*  He also threatened to sue everyone.  *Id.*

On October 16, 2012, Officers Gavagan and Godwin entered the maximum cell block because Plaintiff was walking around pushing various buttons.  Harvey Aff., ¶ 20, Ex. F.  CO Russo walked in and observed COs Gavagan and Godwin putting Plaintiff back into his cell.  *Id.*  Plaintiff was very angry and was yelling.  *Id.*  He began yelling at CO Russo, calling him a bitch and threatening him if he opened the door.  *Id.*  CO Russo ignored Plaintiff, and Plaintiff yelled, "it is because I'm black."  *Id.*

On October 26, 2012, Plaintiff filed an Inmate Request form claiming that CO Phillips was "oppressing" him.  *Id.*, ¶ 21, Ex. M.  In the request, Plaintiff threatened to "blow up on him and [said] it will get ugly" if Phillips did not stay away from him.  *Id.*  Defendant Harvey responded that no one was treating him any differently than any other inmate.  *Id.* She suggested that he control himself and stop making threats.  *Id.*

On November 13, 2012, Plaintiff was walking around the cell block without his shirt in violation of Jail rules. *Id.*, ¶ 22, Ex. N. CO Phillips instructed him to put his shirt back on; Plaintiff advised CO Phillips that Defendant Harvey had told him that he did not have to wear it, which was not true. *Id.* As a result, Plaintiff was issued a Notification of Disciplinary Hearing for giving false information. *Id.*

On December 4, 2012, Plaintiff appeared in the Criminal Circuit Court of Overton County and agreed to a plea deal in which he would plead no contest to charges of possession of over .5 grams of cocaine and criminal impersonation. Docket No. 1-1. These pleas were officially entered by the court on January 4, 2013. *Id.*

On December 6, 2012, Plaintiff filed an Inmate Request form regarding his extradition. Harvey Aff., ¶ 24, Ex. O. Defendant Harvey responded that she had not gotten any of his paperwork at that point. *Id.* She further advised that if there were any documents which required his signature, they would have been provided to him in court. *Id.*

On December 14, 2012, CO Phillips was in max and heard Plaintiff kicking his cell door, even after being told to stop. *Id.*, ¶ 25, Exs. F, P. CO Phillips went to Plaintiff's cell to see what was happening. *Id.* CO Phillips instructed Plaintiff to step away from the door as he and COs Capehart and Seminole entered the cell. *Id.* As they entered, Plaintiff threw his towel on the floor and took a fighting stance. *Id.* CO Phillips sprayed Plaintiff with mace because of his failure to comply with instructions and showing aggression toward officers. *Id.* Plaintiff failed to follow instructions to get on the floor. *Id.* COs Phillips, Capehart, and Seminole proceeded to take him to the floor and handcuff him. *Id.* Plaintiff was taken to a booking cell, where he threatened to kill CO Phillips and to destroy the jail. *Id.* Once Plaintiff calmed down, he was

taken to the restroom for decontamination. *Id.*

As a result of the December 14, 2012 incident, Plaintiff was issued a Notification of Disciplinary Hearing. Id., ¶ 26, Ex. Q. The Disciplinary Board met on December 16, 2012, and found him guilty of threatening an officer. *Id.*, Ex. R. As a result, he received sixty days lock down with loss of visitation, commissary, recreation, and telephone. *Id.*

On December 18, 2012, Plaintiff filed an Inmate Request form regarding his time and when he would be extradited to Kentucky. *Id.*, ¶ 27, Ex. S. Defendant Harvey responded that he was not yet in the Tennessee state system and that she had not received any extradition paperwork from Kentucky. *Id.* She advised that if he had any questions regarding where he would serve his time, he would need to consult with his attorney. *Id.*

On December 20, 2012, Plaintiff filed an Inmate Request form in which he again asked about his sentence and whether he would be returned to Kentucky. *Id.*, ¶ 28, Ex. T. Defendant Harvey responded that, based on her understanding, Plaintiff had six years to serve in Tennessee before he would be returned to Kentucky. *Id.* She advised Plaintiff that if she was told differently, she would let him know. *Id.*

On January 30, 2013, Josh Hoeppner, Plaintiff's criminal attorney in the Overton County matter, sent a letter to Overton County Criminal Court Judge David Patterson in which he notified the Judge that Plaintiff wanted to revoke his plea agreement. Docket No. 38-3, Petition for Relief filed with the Tennessee Court of Criminal Appeals. This request was denied by Judge Patterson on February 6, 2013. *Id.*

On June 13, 2013, CO Kennedy reported that Plaintiff had cursed him while he was distributing legal mail. Harvey Aff., ¶ 29, Ex. F. COs Kennedy, Rogers, and Bean went to

Plaintiff's cell to transfer him to max as a result of his disrespect. *Id.*

On July 27, 2013, CO Haddock was performing a headcount in cell 120, and Plaintiff would not get up for headcount. *Id.*, ¶ 30, Ex. F. After several attempts to wake him, Plaintiff turned over and called CO Ashlock a "faggot." *Id.* As a result, he lost his recreation privileges for the day. *Id.*

On August 9, 2013, Plaintiff filed a Petition for Relief from Unlawful Detention Pursuant to Habeas Corpus with the Criminal Court of Overton County, Tennessee, in which he requested relief from the six year sentence he received in that Court. Docket No. 38-4.

On August 21, 2013, COs Bean, Haddock, Godwin, Brown, and Cross were performing shakedowns of the cells in max. Harvey Aff., ¶ 31, Ex. F. All inmates were searched after coming out of their cells. *Id.* Plaintiff stated that he was not going to be searched. *Id.* Plaintiff was then handcuffed and taken to booking. *Id.* After he was returned to his cell, he began kicking the door and shouting that the officers had taken two of his towels. *Id.* These towels were removed because they were in excess of what was permitted. *Id.* Plaintiff then threatened the officers with bodily harm and claimed that they were discriminating against him. *Id.*

On August 22, 2013, Plaintiff requested stamps from two different officers after Defendant Harvey had already left for the day. *Id.*, ¶ 32, Ex. F. Inmates are advised that they can receive stamps during normal office hours; however, once the office manager has left, they must wait until the following day. *Id.* Plaintiff got very angry and cursed CO Bean. *Id.*

On August 22, 2013, Plaintiff filed a Petition from Relief with the Tennessee Court of Criminal Appeals. Docket No. 38-3.

On August 29, 2013, Plaintiff filed a Petition for Relief from Conviction or Sentence

with the Criminal Court of Overton County. Docket No. 38-5.

On August 30, 2013, Plaintiff made inappropriate comments toward a female officer, Cpl. Deidre Stout. Harvey Aff., ¶ 33, Ex. F.

On October 4, 2013, CO Cross was bringing french fries to Plaintiff and another inmate because their trays did not contain any that night. *Id.*, ¶ 34, Ex. F. He carried the two bowls and attempted to give Plaintiff the one on the top, which actually contained more french fries. *Id.* Plaintiff argued with CO Cross regarding which bowl he was to receive. *Id.*

Also on October 4, 2013, the Criminal Court of Overton County issued a Preliminary Order in which the Court determined that Plaintiff presented a colorable claim for relief and appointed Bruce Myers to represent him in his petition for relief. Docket No. 38-6.

On October 7, 2013, Plaintiff asked to speak with the officer delivering dinner. Harvey Aff., ¶ 35, Ex. F. Plaintiff then asked the officer to make copies for him. *Id.* The officer responded that Defendant Harvey was not making any more copies for the day, as she had actually already left for the day. *Id.* Plaintiff responded by cursing and threatening Defendant Harvey. *Id.* Sgt. Phillips issued a Notification of Disciplinary Hearing to Plaintiff for this behavior. Id., ¶ 36, Ex. F. When COs Densmore and Rake attempted to serve Plaintiff the Notice, he crumpled it up. *Id.* Sgt. Phillips then entered the cell and asked Plaintiff for the Notice (including reports). *Id.* Plaintiff responded that he did not have them. *Id.* Sgt. Phillips searched Plaintiff and found the reports in his hands. *Id.* Since Carter refused to sign the form, he did not receive a hearing. *Id.* A refusal to sign the Notice results in automatic sanctions. *Id.*

On October 18, 2013, CO Haddock was distributing the meal trays to max. *Id.*, ¶ 37, Ex. F. Plaintiff alleged that he was always being shorted and/or given the last tray. *Id.* CO Haddock

reported that he rotates the order in which he serves meals to max. *Id.* On October 23, 2013, CO

Capehart was distributing the meal trays to max; Plaintiff again complained that he was shorted

on his meal tray. *Id.*, ¶ 38, Ex. F. CO Capehart reported that Plaintiff had not been shorted on his

meal tray. *Id.*

On October 24, 2013, Defendant Harvey informed the medical personnel that Plaintiff

had been complaining that he was not getting enough food and/or was receiving less food than

other inmates. *Id.*, ¶ 39, Ex. V. Defendant Harvey requested that they weigh Plaintiff on a

weekly basis. *Id.*

On October 31, 2013, Plaintiff was seen by the medical personnel to be weighed. *Id.*, ¶

40, Ex. V. Plaintiff was heard saying "please lose weight, please lose weight" prior to stepping

onto the scales. *Id.*

On or about November 12, 2013, Defendant Harvey requested that Plaintiff have a series

of labs performed to make sure that there was nothing medically wrong with him. *Id.*, ¶ 41, Ex.

V. Medical personnel relayed Defendant Harvey's concerns to the doctor. *Id.*, ¶ 42, Ex. V. The

doctor advised that he would recommend that Plaintiff be moved to medwatch so that he could

be monitored more closely; however, the doctor ultimately indicated that this was not medically

necessary because there was not a medical reason to do so. *Id.*

The next day, Plaintiff came to medical to be weighed. *Id.*, ¶ 43, Exs. V, W. At that time,

medical personnel recommended that blood work be done. *Id.* Plaintiff refused, stating he did

not think that it was necessary and that he is afraid of needles. *Id.*

On November 15, 2013, the Commonwealth of Kentucky notified the Tennessee

Department of Corrections that Frankfort, Kentucky had, on November 13, 2013, issued a

detainer notice for Plaintiff based upon Warrant No. 201319596 for possession of cocaine over 5 grams for sale. *Id.*, ¶ 44, Ex. X.

When Plaintiff was weighed on November 21, 2013, he had lost weight. *Id.*, ¶ 45, Ex. V. Plaintiff had been vomiting and flushing his food down the toilet in an effort to lose weight. *Id.* As a result, on November 22, 2013, Defendant Harvey decided to move Plaintiff to medwatch so that he could be closely observed. *Id.* On November 23, 2013, Defendant Harvey called and spoke with medical personnel to request that Plaintiff see the doctor because she again received reports that Plaintiff had been vomiting after eating. *Id.*, ¶ 45. The doctor saw Plaintiff on November 25, 2013. *Id.*, ¶ 46, Ex. V. Upon examination, the doctor determined that Plaintiff was healthy enough to be returned to general population with no special meal instructions. *Id.*

Plaintiff was moved back to max per the doctor's instructions. *Id.*, ¶ 47. Plaintiff requested to stay in medwatch; therefore, on November 25, 2013, Defendant Harvey instructed that Plaintiff be moved back to medwatch. *Id.* Plaintiff remained in medwatch so that he could be monitored closely. *Id.* Defendant Harvey also instructed that Plaintiff be required to eat his meals in booking to ensure that he was eating properly. *Id.* After Plaintiff gained two pounds, he was moved back to max on December 4, 2013. *Id.*

Defendant Harvey does not calculate state inmate's time; she merely inputs the time receipts from her facility into the state computer system, TOMIS. *Id.*, ¶ 48. She has explained this to Plaintiff on numerous occasions, and has advised Plaintiff that he can complete a request form and send it to the state. *Id.* The request form should be returned to the Tennessee Department of Corrections, 4th Floor – Rachel Jackson Building, 320 Sixth Avenue North, Nashville, Tennessee 37243-0465. *Id.*, Ex. Y. Plaintiff sent a piece of outgoing mail to this

address on July 22, 2013.  *Id.*, Exs. Z, AA.

On December 5, 2013, Defendant Havey received a telephone call from the State indicating that they had three beds available at the Pikeville facility for state inmates.  *Id.*, ¶ 49. On December 6, 2013, Plaintiff was transferred to the Bledsoe County Correctional Complex in Pikeville, Tennessee, which is a Tennessee Department of Corrections facility.  *Id.*, ¶ 50.

Plaintiff was not discriminated against by Jail personnel, or treated any differently than any other inmate in the Jail.  *Id.*, ¶¶ 51, 52.

Plaintiff repeatedly stated that he wanted to be transferred to Kentucky and began voicing those desires almost immediately following his arrest.  *Id.*, ¶ 53. Plaintiff commented on many occasions that if the Jail would transfer him, they would not have to deal with him any longer. *Id.*, ¶ 54. Plaintiff also stated that he would drop his lawsuit if the Jail agreed to transfer him.  *Id.*, ¶ 55.  Plaintiff frequently made the comment of "That is another lawsuit" to officers when he did not get what he wanted, when he wanted it.  *Id.*, ¶ 56.  The Jail has a policy of not transferring inmates simply because they ask and/or demand to be transferred. *Id.*, ¶ 57.  The Jail also does not transfer an inmate based upon threats or misbehavior.  *Id.* Plaintiff has indicated that he has intentionally misbehaved in an effort to be transferred.  *Id.*, ¶ 58.

The Overton County Jail has regulations concerning how head counts are to be performed.  *Id.*, ¶ 59, Ex. BB.

The Overton County Sheriff's Department has a grievance procedure for inmates. *Id.*, ¶ 65, Ex. HH.  Inmates are permitted to file grievances. *Id.*  The Jail Administrator will respond and if the inmate disagrees with the response, he or she may appeal it to the Sheriff.  *Id.*

On October 18, 2013, Plaintiff filed an Inmate Grievance stating that Defendants Melton

and Harvey were unlawfully holding him and that he should be transferred to Kentucky. *Id.*, ¶ 60, Ex. CC. Defendant Harvey responded to the grievances stating that his concerns were noted. *Id.* Plaintiff did not appeal the grievance. *Id.*

On October 23, 2013, Plaintiff filed an Inmate Grievance claiming that the inmates were served inadequate portions at meals and that they are below state regulations. *Id.*, ¶ 61. Defendant Harvey responded that the portions are the size that the menu sets, and that Plaintiff was not getting less than anyone else. *Id.* Defendant Harvey also noted that she had requested medical to weigh him each week to ensure that he was maintaining a healthy weight. *Id.* Plaintiff did not appeal the grievance. *Id*

On October 25, 2013, Plaintiff filed an Inmate Grievance again stating that he had lost weight and that he was not being feed enough. *Id.*, ¶ 62, Ex. EE. Defendant Harvey responded that the menu was set and approved by TCI mandates. *Id.* She pointed out that if medical personnel think that there is a problem, they will give instructions to change his diet. *Id.* Defendant Harvey again stated that she would have medical check on him. *Id.* Plaintiff did not appeal this response. *Id.*

On November 22, 2013, Plaintiff filed an Inmate Grievance regarding having to be brought to booking to eat his meals. *Id.*, ¶ 63, Ex. FF. He also complained that his portions were not correct. *Id.* Defendant Harvey responded that he is brought to intake on every day shift and that he is receiving the same amount as everyone else. *Id.* Plaintiff did not appeal this response. *Id.*

On November 27, 2013, Plaintiff filed an Inmate Grievance complaining about the light on the camera being on all the time. *Id.*, ¶ 64, Ex. GG. He additionally complained about an

officer watching him eat every meal. *Id.* Defendant Harvey responded that the light on the camera was on twenty-four hours a day because the camera was in operation and that this could not be helped. *Id.* She additionally pointed out that he had lost weight and that the Jail personnel wanted to ensure that he was eating and not forcing the food back up, in order to ensure that he was not getting sick. *Id.* Plaintiff did not appeal this response. *Id.*

### III.  Analysis

#### A.  Local Rule 7.01(b)

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court.  Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the pending Motion on December 12, 2013.  Docket No. 31.  Plaintiff has failed to respond to Defendants' Motion.

#### B.  Summary Judgment Standards

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond.  *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998).  As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded.  The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ...  The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted).  The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*,

477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273.  When this occurs, the moving party

is entitled to summary judgment as a matter of law.  *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v.*

*Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983

Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights pursuant to 42

U.S.C. § 1983.  *See* Docket No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S.

42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,*

474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,*

436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised

power "possessed by virtue of state law and made possible only because the wrongdoer is

clothed with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v.*

*Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## C.  The Case at Bar

**1. Statute of Limitations**

As an initial matter, the statute of limitations for a §1983 action is the same as that for personal injuries, which, in Tennessee, is one year. *See Wilson v. Garcia*, 471 U.S. 261 (1985); Tenn. Code Ann. §28-3-104(a)(3). The statute of limitations begins to run when Plaintiff "knows or has reason to know of the injury which is the basis of his action." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 857 (6th Cir. 2003).

Plaintiff was arrested on February 27, 2012 and booked into the Overton County Detention Facility on February 28, 2012. *See* Docket No. 10, Amended Complaint. He complains of specific incidents in the Jail occurring on March 6, 2012, March 21, 2012, October 7, 2013, and October 11, 2013, and complains generally about being the last person to be let out for recreation time and the first one to be brought back in; "almost always" receiving "extremely short" meal trays; "sometimes" receiving wet french fries and chips; being the last one to receive his meal tray; having limited access to showers, telephones, private and toilets; and being subjected to daily discrimination and racial slurs from inmates and discrimination from Jail officials.[4] *Id.* He filed this action on September 6, 2013, and filed his Amended Complaint on October 25, 2013.

With regard to Plaintiff's claims relating to the March 6, 2012 and March 21, 2012 incidents, those claims are outside of the limitations period and should be dismissed as time-

---

[4] Plaintiff, in his Amended Complaint, also states, "I've made the courts aware of the May 15th, 2012 and December 14, 2012 incidents, in which the Defendants claim no surveillance could be retrieved for various reasons, in my other U.S. District Court case no. 2:13-cv-000019, conveniently" (Docket No. 10, p. 5), but fails to specify what took place on May 15, 2012 or December 14, 2012.

barred.[5]  Plaintiff's continuing violation claims, as applicable, should be considered.

## 2.  Official Capacity Claims[6]

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."  *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988).  As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity.  *Id*.  In order for the public entity to be subject to liability under § 1983, the plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom."  *City of Canton v. Harris*, 489 U.S. 378, 387-88, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989).  *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he/she suffered a deprivation of a constitutionally

_____

[5] Plaintiff's mention of his making the courts aware of some incident that occurred on May 15th, 2012 and December 14, 2012, without more, is insufficient to state any type of constitutional claim.

[6] Defendants contend that neither of them was properly served with process in their official capacity because the summonses that were served did not specify whether they were for Defendants in their individual or official capacities, and were served on Kristin Rosecrants, who was not the County Executive for Overton County at the time of service, nor was she authorized to accept service of process on behalf of Overton County.  Docket No. 32, pp. 23-24. Because, as will be discussed, Plaintiff cannot sustain his official capacity claims against Defendants on substantive grounds, the undersigned will not address Defendants' contention that they were not properly served.

protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

Inasmuch as Plaintiff brings the instant § 1983 claim against Defendants in their official capacities, Defendants, as the Sheriff and the Jail Administrator, stand in the shoes of the entity they represent (*see Claybrook*, 199 F.3d at 355 n.4), which is Overton County. Plaintiff's claims, therefore, must be evaluated under the foregoing standards of liability. *City of Canton*, 489 U.S. at 387-88.

Plaintiff has failed to even allege the existence of any deficient Overton County policy, practice, or custom, much less allege that an official Overton County policy, practice, or custom caused him constitutional injury. Absent such allegations, Plaintiff cannot sustain his official capacity claims against Defendants.

### 3. Individual Capacity Claims

#### a. Defendant Melton

In order to defeat Defendants' properly supported Motion for Summary Judgment, Plaintiff must present affirmative evidence that Defendant Melton violated his rights; conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must demonstrate that Defendant Melton either directly participated in the activity, or personally authorized, approved, or acquiesced in the activity. *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1980). Plaintiff has failed to do so.

Plaintiff, in his Amended Complaint, mentions Defendant Melton specifically only twice,

as follows:

1. The Plaintiff has remained at the Overton County Justice Center under the Tyrrany of Sheriff, W.B. Melton (p. 1)

2. By the Overton County Sheriff . . . holding me beyond the terms of my sentence, I'm being deprived of my life and liberty without due process of law . . . (p. 2)

Docket No. 10, pp. 1, 2.

Neither of these allegations is sufficient to impose liability on Defendant Melton.

Plaintiff's judgment stated that he was under the control of the Tennessee Department of

Correction for the duration of his six year Tennessee sentence. Thus, Defendant Melton has no

jurisdiction to control where Plaintiff is housed or for how long, nor can he control the

calculation of Plaintiff's time or whether Kentucky will run its sentence concurrently with his

Tennessee sentence. *See* Harvey Aff., Ex. S; Tenn. Code Ann. § 40-35-212(d)(1).[7] Accordingly,

Plaintiff cannot establish that Defendant Melton violated his constitutional rights.

It appears from the allegations of Plaintiff's Amended Complaint, when taken in their

entirety, that Plaintiff is attempting to impose liability on Defendant Melton because he is the

Sheriff. Plaintiff is unable to sustain his claims against Defendant Melton, as the Sheriff,

however, because § 1983 does not permit the imposition of liability based upon *respondeat

superior*, and, as discussed above, Plaintiff has not alleged that any official Overton County

policy, practice, or custom caused Plaintiff injury. *Polk County v. Dodson*, 454 U.S. 312, 325

---

[7] Tenn. Code Ann. § 40-35-212(d)(1) states in pertinent part:

    . . . the court shall retain full jurisdiction over a defendant sentenced to the department during the time the defendant is being housed in a local jail or workhouse awaiting transfer to the department. The jurisdiction shall continue until the defendant is actually transferred to the physical custody of the department.

(1981).  *See also, Monell, supra*; *Street, supra.*

### b.  Defendant Harvey

As discussed above, in order to defeat Defendants' properly supported Motion for

Summary Judgment, Plaintiff must present affirmative evidence that Defendant Harvey violated

his rights, by either directly participating in the activity, or personally authorizing, approving, or

acquiescing in the activity.  *See Street, supra; Anderson, supra*; *Nix, supra*; *Lujan, supra*;

*McDonald, supra; Hays, supra*.  Plaintiff has again failed to do so.

Plaintiff, in his Amended Complaint, mentions Defendant Harvey specifically, on only

four occasions, as follows:

1.  The Plaintiff has remained at the Overton County Justice Center under the
    Tyrrany of . . . Jail Administrator, Shannon Harvey (p. 1)

2.  By the . . . Jail Administrator holding me beyond the terms of my sentence, I'm
    being deprived of my life and liberty without due process of law . . .  (p. 2)

3.  C/O Josh Demsmore "thought he heard me cussing Defendant Harvey" (p. 6)

4.  Shannon Harvey (Defendant), has been fired twice from Jails, White County and
    Jackson County, once for stealing money, the other for "messing up inmates'
    time" (p. 10)

Plaintiff's first two mentions of Defendant Harvey cannot give rise to liability upon her,

because, for the reasons discussed above, she has no jurisdiction to control where Plaintiff is

housed or for how long, nor can she control the calculation of Plaintiff's time or whether

Kentucky will run its sentence concurrently with his Tennessee sentence.  *See* Harvey Aff., Ex.

S; Tenn. Code Ann. § 40-35-212(d)(1).  Plaintiff's third mention actually relates to CO

Demsmore, and does not involve Defendant Harvey.  Accordingly, Plaintiff's third mention of

Defendant Harvey cannot impose liability upon her.  Plaintiff's final mention of Defendant

Harvey does not relate to any interaction between herself and Plaintiff, and therefore cannot impose liability upon her in this matter. Accordingly, Plaintiff cannot establish that Defendant Harvey violated his constitutional rights.

### 4. Claims Relating to Plaintiff's "Wife"

Plaintiff, in his Amended Complaint, also attempts to assert claims on behalf of his "wife," who was arrested with him, charged, and housed in the woman's jail. *See* Docket No. 10, pp.5-6. Plaintiff's wife, however, is not a party to the instant action and Plaintiff cannot raise claims in this action on her behalf, because a plaintiff in a § 1983 action must assert his own legal rights and interests. *See, e.g, Conn v. Gabbert*, 526 U.S. 286, 292 (1999). Accordingly, Plaintiff lacks standing to assert her claims.

## IV. Conclusion

For the foregoing reasons, the undersigned concludes that Plaintiff has failed to demonstrate that Defendants violated his constitutional rights. Absent such a violation, Plaintiff cannot sustain his constitutional claims and Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 31) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. CLIFTON  KNOWLES
United States Magistrate Judge